```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
```

UNITED STATES OF AMERICA,

           Plaintiff,

vs                               Cr. No.   17-20233
                               HONORABLE MATTHEW F. LEITMAN

BERTRAM C. JOHNSON,

           Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

On March 2, 2018, Defendant Bertram C. Johnson pleaded guilty to Count 1 of the Indictment, "Conspiracy to Commit Theft from a Federally Funded Program," in violation of 18 U.S.C. §§ 371, 666(a)(1)(A).  At the time, Mr. Johnson was a sitting Michigan State Senator; immediately following that plea, he resigned that office. The offense pertains to a job that then-Senator Johnson provided to Glynis Thornton, for which she collected hourly wages paid with State of Michigan funds while doing little work to justify those wages. Mr. Johnson is scheduled for sentencing on September 6, 2018, at 10:00 a.m.

The parties and the probation department agree on the scoring of the United States Sentencing Guidelines, and the only objections to the PSIR filed by the defense relate to what motivated Mr. Johnson to commit the acts in question.  However, the defense would note that neither of these factual disputes implicate the validity of Mr. Johnson's guilty plea or any sentencing guidelines variable. Regardless of his motive, Mr. Johnson fully acknowledges that he

knowingly and improperly used state funds to pay a friend of his as a staffer, in a position where that staffer did not do work to earn those funds.  Therefore, Mr. Johnson is not asking the Court to adjudicate his dispute with the Government over why he committed the acts, but rather just to note that there is a difference in opinion on that score.

In the main, this memorandum addresses what level of punishment is appropriate in this case.  The parties agree that the sentencing guidelines yield a guidelines range of 6-12 months, in Zone B of the Sentencing Guidelines Table.  As noted at par. 48 of the PSIR, a sentence within the guidelines range may be satisfied with (1) a sentence of imprisonment, (2) a split sentence involving imprisonment in some combination with community confinement or home detention, or (3) a sentence of probation with a condition or conditions that substitute intermittent confinement, community confinement, or home detention for straight imprisonment.

Based on the facts and circumstances of this offense and this offender, and in light of the sentencing factors described in 18 U.S.C §3553(a), counsel asks the Court to impose a probationary sentence with a condition of home detention for that period of time the Court believes appropriate within the 6-12 month guidelines range.  For reasons discussed more fully below, Counsel argues that a probationary sentence will be sufficient, but not greater than necessary, to meet the goals of sentencing.  *See, e.g., Gall v. United States*, 552 U.S. 38, 48-49 and fn. 4 (2007) (recognizing in the departure context, which this case is not, that probation involves loss of liberty, is "not granted out of a spirit of

2

leniency," and "can have a significant impact on that person and society.").

## BACKGROUND

*Personal*.  Mr. Johnson will be 45 years old on October 20.  He was born in Detroit and raised by his mother and father in a household where all of his material and emotional needs were met.  He graduated from University of Detroit Jesuit High School, and in succeeding years attended college at University of Detroit Mercy (last in 2014), where at present he is one semester short of graduation with a double major.  He has 4 children, two of whom he actively helped raise into adulthood, and two others (ages 16 and 5) whom he still is raising.  His two youngest children reside primarily with Mr. Johnson at the Highland Park residence.

Of serious immediate concern, Mr. Johnson is the primary caretaker of his 65-year-old mother, who lives with him as well.  She suffers from multiple sclerosis, and while she attempts to maintain her independence she needs Mr. Johnson's every-day assistance.  On some days the condition is more debilitating than on other days, but even on the better days his mother's ability to maintain her own basic needs, not to mention their joint household, is significantly limited.

Mr. Johnson is healthy, physically and emotionally.  He drinks sparingly, and has never used illegal drugs.  He has a prior felony conviction from when he was 19 years old, and another conviction for a traffic misdemeanor when he was 22.  However, the measure of a person should not be in the mistakes they have made but rather in how they respond to those mistakes.  In the decades since his last

3

conviction and until this one, Mr. Johnson's adult life has been characterized by hard work, and commitment to his family and his community, both in private and public life.

Since 2001, Mr. Johnson has worked in the public sector. From 2001-2006, he was State Representative Bill McConico's chief of staff. Following Rep. McConico's retirement from the legislature, Mr. Johnson succeeded him as State Representative and served in that office from 2007-2010. Then, he was elected State Senator and served in that office from 2011 until his recent resignation. As the numerous letters submitted on his behalf attest, he worked in the public sector because he has a strong sense of commitment and loyalty to his community.

Mr. Johnson has never been, and probably never will be, monetarily rich. He lives to help others. A number of people familiar with Mr. Johnson's work in the legislature have written the Court describing his energy, tenacity, and commitment in representing the interests of his community, not just his district but the greater Detroit area. They describe his successful advocacy on issues from the public schools to transportation to street lights to easing the tax burdens of the indigent and working poor in danger of losing their homes. According to one letter writer, that advocacy translated into some 31 bills passed over a dozen years—-no mean feat when it is recalled that his party was in the minority for most of that time. According to another, his testimony in Lansing was instrumental in the City of Highland Park getting State approval of its plan to rise out of insolvency. According to a third, his work among his legislative colleagues saved 6 DPS schools from closure.

These are just a few concrete examples of his efforts and the advances he helped obtain for his constituents across Metropolitan Detroit.[1]

Within his immediate community, there is heartfelt appreciation for Mr. Johnson. One local educator said,

> Bertram Johnson stood side by side with me in the fight against those that stood in the way of our children becoming well rounded citizens. I also invited Bertram to join me in the fight against illiteracy in my city and he rose to the challenge. He made sure to come to the school where I teach and read to our children and also to share words to the older young men in the school. He has participated in numerous community service projects with me and for that I am very grateful. Each year our school has a welcome back to school clap in and Bertram Johnson made sure he was there. The look on our students' faces as they entered the building said it all.

Said one Detroit councilperson, "Bert has been a mentor and a strong pillar within the community that he represents and throughout the state. * * * I have watched him fight tirelessly for the respect and funding that is necessary to provide a pathway for cities like Highland Park to survive." And the letter from a local mayor reflected, "Whenever [Mr. Johnson] is called upon for support, he is there and available for myself and [his community]. Bert has been a blessing in assisting our city's growth and development."

Still others wrote about Mr. Johnson's more individualized demonstrations of commitment and loyalty. Family members and close

---

[1] Counsel cannot find it at this writing, but he recalls a newspaper article that criticized Mr. Johnson for his voting record. The Court should know that, during that period of time, Mr. Johnson suffered a horrific accident involving a snowblower. He required nine surgeries and lengthy rehabilitation to recover most of the use of his mangled hand. While he was unable to be in Lansing for votes as often as he would have liked, his legislative advocacy and service to his constituents continued in other ways, as described.

5

friends extol him as a father, and as the day-to-day caretaker for his mother. Colleagues express their gratitude for his inspiration and mentorship, of them and others. Clearly, Mr. Johnson has made a strong, positive mark on family, friends, colleagues, and community. The larger point is that the good he has done and the value he has provided far outweigh the mistakes he has made.

*Instant case.* This case arose out of Mr. Johnson putting Glynis Thornton on his staff, as an hourly worker, and authorizing the payment of wages from the State treasury for hours that were not actually worked. The Government's position is that Mr. Johnson gave Ms. Thornton the job in repayment of loans, and that she was not required to do any work. Mr. Johnson disputes the Government's position on those points, and objected to them in the PSIR. However, Mr. Johnson does not wish to distract the Court from his acceptance of responsibility by further contesting those issues. Accordingly, we are <u>not</u> asking the Court to resolve the PSIR objections. We believe they are immaterial for sentencing purposes.

### **ARGUMENT REGARDING SEC. 3553(A) FACTORS, AND FOR PROBATION**

The Court is thoroughly familiar with the factors it is to consider in sentencing Defendant, pursuant to 18 U.S.C. § 3553(a), including the directive that the Court impose a "sentence sufficient, but not greater than necessary" to accomplish the objectives of sentencing. In this case, a probationary sentence with home confinement as directed by the guidelines will satisfy the objectives of sentencing. Said a different way, a sentence of incarceration is unnecessary, and indeed excessive, in addressing the purposes of

6

sentencing. The following factors are relevant in this determination.

    1. *Nature and Circumstances of the Offense and the Offender.*

There is no question that Mr. Johnson's offense was serious: a democratic society, which relies on public officials' performance of their duties honestly and in good faith especially as it relates to public monies, cannot countenance theft by those officials of those monies.

That said, it is axiomatic that the Court is to sentence not just the offense, but also the offender. The numerous letters submitted to the Court, including those whose contents are described above, describe a man who demonstrates on a daily basis a host of virtues that society hopes for its members, but too often fails to see: care and love for one's family; hard work, loyalty, and a commitment to the greater good; the courage to confront injustices and help the underserved and under-represented. The mistake that Mr. Johnson has made must be acknowledged and addressed, but its adverse impact on society is dwarfed by the good he has done. As one of the letters said, "He has made some mistakes, but he has made a whole lot more exceptional great decisions."

Another offender attribute to assess is his remorse. It can be difficult to demonstrate remorse in a concrete fashion, but one way is to try and make things right. In this case, even though it is difficult for him to do, Mr. Johnson will make restitution to the State of Michigan in at least half of the stipulated amount immediately upon sentencing, and will pay the balance owed as quickly as the Court orders.

7

Finally, a relevant offender characteristic is his family responsibilities, and his history of taking care of those responsibilities.  Mr. Johnson is the primary custodial parent for both of his young sons, and also the primary caretaker for his mother who suffers from a debilitating disorder which can be progressive.  His presence in the home is necessary for the wellbeing of his sons and his mother.

Balancing the offense against all of these offender characteristics—-Mr. Johnson's long track record of hard-working and faithful service to his community, his remorse, and his family responsibilities--militates in favor of a probationary sentence and against one involving incarceration.  Where non-incarceration alternatives are available and proportional, as they are here or the guidelines would not provide for them, in these circumstances incarceration should not be the default punishment.

The Court will note that some characteristics of Mr. Johnson discussed above are mentioned in the Sentencing Guidelines.  For instance, an offender's history of public service and other "good works" is discussed in USSG §5H1.11 (Policy Statement).  Similarly, a discussion of "Family Ties and Responsibilities" is found in USSG §5H1.6 (Policy Statement).  For each, the policy statement provides that such characteristics are "not ordinarily relevant in determining whether a <u>departure</u> may be warranted."  (Emphasis supplied.)  However, in advocating for a sentence of probation, the defense is not seeking a "departure."  Probation is an authorized sentence under the guidelines as scored in this case; no downward departure is

8

necessary for such a sentence to be imposed. Therefore, these Policy Statements are inapposite in this case.

The "Introductory Commentary" to Part H. of the Sentencing Guidelines (the part that contains 5H1.6 and 5H1.11) recognizes this principle. That Commentary notes, in part:

> Generally, the most appropriate use of specific offender characteristics [such as those discussed above] is to consider them not as a reason for a sentence outside the applicable guideline range but for other reasons, such as <u>in determining the sentencing within the guideline range, the type of sentence (e.g. probation or imprisonment) within the sentencing options available for the applicable Zone on the Sentencing Table</u>, and various other aspects of an appropriate sentence.

*Guidelines Manual, Nov. 1, 2016*, p. 473. [Emphasis supplied.]

Similarly, the payment of restitution required by law may not be considered in determining whether to grant a downward <u>departure</u> from the Guidelines. See U.S.S.G. §5K2.0(d)(5). Again, however, in determining a sentence <u>within</u> the guidelines, 5K2.0(d)(5) does not prevent the sentencing court from taking into account a defendant's demonstrated remorse by his commitment to promptly pay restitution. Indeed, since time immemorial sentencing judges have assessed a defendant's acknowledgment of wrongdoing and remorse for that wrongdoing when imposing sentence.

Counsel reiterates that the Court's sentence does not issue just with respect to the offense and Mr. Johnson's participation in it, but rather in view of the <u>entirety</u> of his life. In determining what is appropriate for a particular offender within the guidelines range, the Court is expected to, and should, take note of the offender's positive contributions to society just as it does the negative impact of the criminal behavior. The Court is expected to consider what

other important obligations the offender has in his life and how he has met them historically. The Court is expected to gauge the offender's remorse and related commitment to take the appropriate lessons from his conviction.

In this case, Mr. Johnson's life's "body of work" is overwhelmingly positive, and demonstrably beneficial to his family and community. He has important family obligations that will suffer if he is incarcerated. And his remorse and commitment to do better is patent. On this factor, in considering the above, counsel urges the Court to find that a guidelines-authorized sentence to probation with home confinement will be "sufficient but not greater than necessary" to accomplish the objectives of sentencing.

2. *"Just punishment" that promotes respect for the law.*

As recognized by Gall, supra, any substantial restriction of freedom, even probation, constitutes "punishment" when considering what form of punishment is appropriate in a given case. The guidelines authorize probation with home confinement in a case such as this one. Equally important, there is no thumb on the scale in favor of incarceration over the alternatives to incarceration authorized by the guidelines, like probation. So, by definition, probation is deemed a "just" punishment under the guidelines.

In the course of assessing whether probation provides a sufficient quantum of "just punishment," it also may be appropriate to consider the collateral consequences already incurred by the offender. In this case, Mr. Johnson has suffered a severe penalty in resigning his office. He has been held up to ridicule and contempt. This all may be justified, but that does not lessen the fact that he

has suffered that severe penalty. Again, a probationary sentence as described above constitutes additional consequence and punishment that is sufficient, fair, just, and one that affirms respect for the law.

    3. *Afford deterrence/protect the public.*

"Deterrence" is a concept usually applied to the anticipated impact of a sentence on others who might contemplate similar criminal activity. It is commonly observed that deterrence has more to do with the "certainty" of punishment rather than its "severity." Regardless of the sentence imposed by the Court, it seems likely that a similarly situated public official knowing of this case would find enough deterrent effect simply by Mr. Johnson's ordeal, its felony outcome, and the accompanying loss of office.

"Protection of the public" usually refers to the impact of sentence on the defendant, and future recidivism. This offense behavior was aberrant in Mr. Johnson's adult life, as, again, the numerous letters submitted on his behalf help illustrate. To the extent one might argue to the contrary based on his trouble as a youth, that argument would be misplaced. For one thing, even in his youth those troubles were completely out of character. More significantly, though, when Mr. Johnson got past those troubles in his early 20s he made himself better. He learned trades as a barber and bartender. He went back to school. He often worked more than one job, including, for some years, working for Rep. McConico while at the same time managing his father's law office. Mr. Johnson today is not Mr. Johnson as a 19 year old, and judging him by his past

11

troubles would do him a great disservice.  In sum, there is no reason to believe that he will engage again in criminal behavior.

The data bolsters this conclusion. As mentioned, Mr. Johnson will be 45 years old in a few weeks.  Studies consistently have shown that recidivism declines significantly as age increases. *See, e.g., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, 28 (2004) (rate of recidivism of persons between the ages of 41-50, criminal history category I, measured at 6.9%, with persons over 50 in criminal history category I measured at 6.2%).[2]  In addition, we know that persons with strong family and community support, as Mr. Johnson has in great amounts, are lower risks to recidivate.

Given all of this, protecting the public from future harm from Mr. Johnson seems a remote concern for sentencing purposes, and certainly not a factor that weighs in favor of incarceration.  To the contrary, the low risk of recidivism is a factor in favor or probation.

4. *Provide needed educational/vocational training, health care*.

This factor does not seem pertinent to Mr. Johnson.  He has more than adequate educational training.  To the extent that he may benefit from more, it is more appropriately provided outside of the custodial environment.  In terms of health care, fortunately he is in good health, drinks sparingly, and has no history of using illegal drugs.

---

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

12

5.  *The kinds of sentences available*.

As noted, available sentences <u>within the guidelines range and Zone</u> include probation, a split sentence (community confinement and/or home detention, or a combination of imprisonment plus community confinement/home detention), or traditional incarceration for up to the statutory maximum term.  No variance or downward departure from the guidelines is necessary to place Mr. Johnson on probation.  Therefore, a probationary sentence not only is an available sentence, but it is <u>as available</u> as any other type of guidelines sentence.  It should not be viewed as disproportionately lenient, much less "a break" or "a pass" as some might characterize it.  It is a fully authorized and proportional sentence.

6.  *Avoid unwarranted sentencing disparities*.

Because a probationary sentence is within the guidelines in this case, imposing it would not generally create an unwarranted sentencing disparity.  Likewise, Counsel is unaware of any related case whose outcome would represent an "unwarranted sentencing disparity" should Mr. Johnson receive a probationary sentence.

## CONCLUSION

Bertram C. Johnson stands convicted of a serious felony. Balanced against that, by all accounts he is a wonderful father, a critically important caretaker to his mother, faithful to his friends and family, and a stalwart and positive member of his community.  He is ashamed and remorseful, while at the same time recommitted to living the upright life that characterized him prior to this offense. He has suffered a significant penalty already in the resignation of his office.  Punishment in the form of incarceration is unnecessary

to further the purposes of sentencing, and instead seems only to be punishment for punishment's sake.

The alternative of probation with conditions is an authorized sentence, as authorized as any other available sentence including incarceration. Moreover, because it is an authorized guidelines sentence, probation is deemed a sanction that provides appropriate and proportional punishment for this offense. As discussed above, a probationary sentence satisfies every factor under 18 U.S.C. § 3553(a), and equally important, it will allow Mr. Johnson to continue parenting, working, and otherwise contributing to society without interruption. In short, a sentence of probation with home detention will constitute punishment that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing.

Respectfully submitted

Dated: August 30, 2018

s/John A. Shea
John A. Shea (P37634)
Attorney for Defendant
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that, on August 30, 2018, he electronically filed this Sentencing Memorandum. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.


Dated: August 30, 2018        s/John A. Shea
                                            John A. Shea (P37634)
                                            Attorney for Defendant
                                            120 N. Fourth Avenue
                                            Ann Arbor, Michigan 48104
                                            (734) 995-4646
                                            jashea@earthlink.net